### In the Matter of the Arbitration between

**FRIED, KRUPP, GmbH, KRUPP REEDEREI UND BRENNSTOFF–HANDEL–SEESCHIFFARHT, as Time–Charterer of the M/V "BARON VENTURE,"**

**and**

**SOLIDARITY CARRIERS, INC., as Owner of the M/V "Baron Venture,"**

**and**

**Amerada Hess Shipping Corporation, as Voyage Charterer of the M/V "Baron Venture."**

**No. 85 Civ. 6929 (CBM).**

United States District Court, S.D. New York.

May 12, 1987.

---

or

    b. Fruit of the Loom shrinks 38 percent from its normal size.

    or

    or

    b) The commercial says that Hanes would last longer than Fruit of the Loom.

    or

    c) Something else about which lasts longer.
    [56% of those questioned selected either b) or c).]

Haight, Gardner, Poor & Havens by Donald J. Kennedy and Edward A. Rial, New York City, for Fried, Krupp, GmbH.

Walker & Corsa by Richard A. Corwin and Christopher H. Mansuy, New York City, for Solidarity Carriers, Inc.

Hill, Betts & Nash by Kenneth Geller, New York City, for Amerada Hess Shipping Corp.

## OPINION

MOTLEY, Senior District Judge.

This action was instituted pursuant to 9 U.S.C. Section 10 by Fried, Krupp, GmbH ("Krupp"), a time charterer of the M/V Baron Venture, to vacate in part an arbitration award. The ship's owner, Solidarity Carriers, Inc. ("Solidarity"), has cross-petitioned to confirm in part and modify in part the arbitration award, or in the alternative to confirm it. Amerada Hess Shipping Corporation ("Hess), which sub-chartered the vessel from Krupp, has also cross-petitioned to confirm the arbitration award.

For the reasons that follow, Krupp's petition to vacate in part the arbitration award is denied. Solidarity's cross-petition to modify the award is denied, and the cross-petitions of Solidarity and Hess to confirm the award are granted. The application of Hess for attorney fees is denied.

*Facts*

In May 1978 Krupp time-chartered a vessel, the M/V "Baron Venture" from Solidarity Carriers, Inc. A few months later, in August 1978, Krupp sub-chartered the vessel to the Amerada Hess Shipping Corporation who wished to transport a cargo of Sarir crude oil from Libya to the Hess Oil Virgin Islands Corporation ("HOVIC") terminal located at St. Croix, Virgin Islands. The cargo shipment did not go smoothly, however. Upon reaching St. Croix the vessel was unable to discharge the entire cargo of petroleum, causing it to retain on board approximately 22,000 barrels of the crude. The retained cargo remained on board the vessel until the spring of 1979 when it was sold in Rotterdam.

The discharge failure and the vessel's consequent retention of the petroleum prompted a spate of claims by various parties with respect to who should bear the responsibility for the loss of cargo, delay to the vessel and expenses associated with the ultimate removal of the retained cargo. Solidarity and Krupp agreed to arbitrate their claims from the beginning. Hess, however, filed a lawsuit against Krupp claiming indemnification for the demand that had been made on it by HOVIC as owner of the undelivered cargo. *Amerada Hess Shipping Corp. v. Fried, Krupp GmbH*, 78 Civ. 5302 (CBM). The Hess/Krupp action was eventually dismissed upon Krupp's motion to compel arbitration, whereupon a consolidated arbitration among Krupp, Hess and Solidarity, all of whom were parties to arbitration agreements, was commenced in New York.

At about the same time as this arbitration was proceeding, HOVIC, a Hess subsidiary whose name appeared on the ship's bill of lading as owner of the petroleum cargo, but who was not a party to any arbitration agreement, commenced a lawsuit against Solidarity in federal court for the value of the undelivered cargo. *Hess Oil Virgin Islands Corp. v. S/T Baron Venture*, 78 Civ. 5512 (CBM). HOVIC's claim arose from Solidarity's obligations under the bill of lading. Although Solidarity moved to compel HOVIC's participation in the consolidated arbitration its motion was denied. The court premised its refusal to compel arbitration on the simple fact that HOVIC was not a signatory to any arbitration agreement. In addition, the court found there was no showing of express agency or of fraud such that HOV-

IC could be bound by Hess's agreement to arbitrate.

Subsequent to this ruling by the court, HOVIC and Solidarity reached a settlement whereby Solidarity agreed to pay HOVIC 75% of its $280,861.64 cargo loss claim, i.e., $210,646.23. HOVIC retained an interest in the 25% of its total claim not compensated for by the settlement with Solidarity.

A short time after HOVIC and Solidarity settled the federal court action, Solidarity asserted an additional claim against Krupp in the continuing consolidated arbitration. Solidarity claimed indemnification from Krupp for the amount Solidarity had paid out to HOVIC in the federal court settlement. Hess at this point also asserted additional claims in the arbitration. On behalf of HOVIC, its subsidiary, Hess claimed that Krupp was liable for the remaining 25% of Hovic's $280,861.64 cargo loss claim not satisfied by the HOVIC/Solidarity settlement.

Although these additional claims were asserted somewhat late in the course of the arbitration proceedings, there is no dispute that at the seventh and penultimate arbitration hearing Hess informed Krupp definitely of its intent to present a claim for the unsatisfied portion of HOVIC's cargo loss. Furthermore, even before this Hess had already mentioned to Krupp, which was itself well aware of the pending litigation between HOVIC and Solidarity, the possibility that such a claim might be asserted. Indeed, at the sixth arbitration hearing, upon hearing of this potential claim by Hess, Krupp had stated that it believed Hess had no right to raise HOVIC's claims in the arbitration.

Despite the fact that by the close of the arbitration hearings Krupp knew that Hess was submitting a claim for HOVIC's losses to the arbitrators, it never moved for a stay of the arbitration so that a judicial determination of whether Hess was entitled to assert HOVIC's claims could be obtained. Instead, Krupp argued in its post hearing brief that especially in light of the district court's prior ruling that HOVIC's claims were not arbitrable Hess was not entitled to use the arbitration to assert HOVIC's claim for those damages that had not been satisfied by the HOVIC/Solidarity settlement.

A three member arbitration panel rendered its decision on July 30, 1985 finding Krupp "liable to Solidarity to the extent of Solidarity's settlement contribution with HOVIC, and to Hess for the outstanding balance of HOVIC's cargo claim." (Award at 20). The majority of the panel, relying on "established New York arbitration practice" that a party to an arbitration may assert its corporate affiliate's claims, rejected Krupp's argument that it was beyond the scope of their authority to award Hess an amount on behalf of HOVIC. The third panel member, however, citing Second Circuit authority, as well as the district court's ruling in the HOVIC/Solidarity lawsuit, vigorously dissented from the award on behalf of HOVIC.

The arbitrators calculated the damages due Solidarity and Hess based on the value of the retained cargo, "less expenses which Krupp would have reasonably incurred after departing the St. Croix berth at Hess' request to consolidate the cargo, return to the berth and subsequently discharge the balance of cargo." Accordingly, Krupp was assessed liability in the amount of $176,735.00, with $44,185.00 going to Hess and $132,550.00 to Solidarity. Including interest on these two awards and offset for demurrage awards in favor of Krupp, the total award to Hess was $32,230.95 and the total award to Solidarity was $212,878.98. The arbitrators also allowed for post-judgment interest of 10% from 30 days of the award until the date the award was reduced to judgment.

*Discussion*

a. *Krupp's Petition to Vacate the Arbitration Award Made to Hess on behalf of HOVIC.*

Krupp has petitioned to vacate the arbitrators' award to Hess on behalf of HOVIC claiming that this award exceeded the scope of the panel's authority and was in manifest disregard of the law. While Krupp's objections are understandable, especially in light of the troubling reasoning

set forth by a majority of the panel in support of the award on the HOVIC claim, nonetheless, there is no basis for upsetting this portion of the award.

The scope of review of a federal court in considering a petition to vacate an arbitration award is extremely narrow. *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.1960), *cert. denied* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727; *Sidarma Societa Italian di Armamento Spa v. Holt Marine Industries, Inc.*, 515 F.Supp. 1302 (S.D.N.Y.1981), *aff'd.* 681 F.2d 802 (2d Cir. 1981). An award will be vacated only if the party contesting it has met the heavy burden of showing that the arbitration has been flawed by one of the specific grounds for upsetting an award set forth in 9 U.S.C. section 10 (e.g., fraud, corruption, arbitrators exceeding their power) or that the arbitrators acted in "manifest disregard" of applicable law. *Id.* at 1306.

■ "Manifest disregard" of applicable law as a ground for upsetting an arbitration award presupposes something far beyond and different from a mere error in law or failure on the part of the arbitrators to understand or apply the law. *Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967); *Dundas Shipping & Trading Co. Ltd. v. Stravelakis Brothers Ltd.*, 508 F.Supp. 1000 (S.D.N.Y.1981). Rather, the party moving to vacate must show that the arbitrators have deliberately disregarded what they knew clearly to be the law in order to reach a desired result. *Sidarma Societa Italian di Armamento Spa v. Holt Marine Industries, Inc.*, 515 F.Supp. 1302 (S.D.N.Y.1981); *Bell Aerospace Co. v. Local 516*, 356 F.Supp. 354 (W.D.N.Y.1973), *aff'd in part, rev'd on other grounds*, 500 F.2d 921 (2d Cir.1974).

■ Krupp contends that the arbitrators' decision to award Hess damages for the losses suffered by its subsidiary, HOVIC, was in manifest disregard of this court's prior ruling in the HOVIC/Solidarity lawsuit that HOVIC's damage claim was not arbitrable. Krupp also argues that by basing the award simply on the corporate relationship between Hess and HOVIC the arbitrators grossly disregarded the fundamental principles of corporate separateness.

In the district court proceeding between HOVIC and Solidarity the court ruled only that HOVIC, because it was not a party to an arbitration agreement, could not be compelled to arbitrate its cargo damage claim. The court did not consider, however, whether in the particular context presented to the arbitrators HOVIC's claim would be arbitrable if asserted by a party to the arbitration. Thus, the panel's ruling that Hess could assert HOVIC's claim is distinguishable from the court's ruling that HOVIC could not be compelled to arbitrate, and thus, is not in violation or manifest disregard of it.

■ As to petitioner's second focus of "manifest disregard"—the arbitration panel's reliance on the mere fact of corporate relationship between HOVIC and Hess in permitting Hess to assert HOVIC's claim—the court has some sympathy for Krupp's consternation. Much of the arbitration precedent relied on by the arbitrators, allowing corporate affiliates to assert each others' claims simply by virtue of their corporate affiliation, seems to fly in the face of established principles of corporate separateness and of the specifically contractual and individual nature of agreements to arbitrate. However, whether or not the reasoning of the majority of the panel was in fact legally erroneous,[1] it could not constitute "manifest disregard"

---

1. Judicial authority recognizing the ability of corporate entities to assert their affiliates' claims (albeit not in the context of arbitrations) under a "real party in interest" analysis, *see, e.g., Prevor–Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Management, Inc.*, 620 F.2d 1 (1st Cir.1980); *Unilever (Raw Materials) Ltd. v. M/T Stolt Boel*, 77 F.R.D. 384 (S.D.N.Y.1977), or (even in an arbitration context) as potential indemnitors of their affiliates, *Caribbean Steamship Co., S.A. v. Sonmez Denizcilik v. Ticaret A.S.*, 598 F.2d 1264 (2d Cir.1979), provides some limited support for the recent tendency of arbitration panels to find in corporate relationship alone sufficient basis for the arbitration of claims in fact belonging to affiliates who are not parties to the arbitration agreement.

of the law where the arbitrators explicitly understood their outcome to be grounded in established precedent and practice. As discussed above, mere error of law is not sufficient basis for vacating an arbitration award. *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir.1978), *cert. denied* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791; *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 300 (2d Cir.1963), *cert. denied* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705.

■ Krupp would appear to have a stronger argument for vacating the arbitration award to Hess in its contention that the arbitrators exceeded the scope of their authority by awarding damages for a claim that in fact belonged to a non-party to the arbitration. It is well-established that a non-party to an arbitration agreement cannot compel or be subject to arbitration of its disputes. *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 523 F.2d 527, 539 (2d Cir.1975), *cert. denied* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643; *Ahn v. Rooney, Pace, Inc.*, 624 F.Supp. 368, 369 (S.D.N.Y.1985). Moreover, a non-party to an arbitration agreement cannot "make an arbitrable claim out of a non-arbitrable one by assigning it to a person having a broad 'any dispute' arbitration contract with the party against whom the claim lies." *Caribbean Steamship Co., S.A. v. Sonmez Denizcilik ve Ticaret A.S.*, 598 F.2d 1264, 1266–67 (2d Cir.1979). Fur-

thermore, corporate relationship alone does not provide a basis for allowing a party to the arbitration to assert the claim of an affiliate who is not itself a party to the arbitration agreement. *See id.* (basis for permitting charterer to assert the claim of its affiliate who was not a party to the arbitration lay solely in charterer's arbitrable claim for indemnification of obligations to its non-party affiliate).

The arbitrators did, however, act within the scope of their authority in awarding Hess damages for the remainder of HOVIC's claim because of the potential indemnification obligations present in this case. The Second Circuit has held that where a party to an arbitration possesses potential liability to a non-party to the arbitration, it may in some circumstances be entitled to assert the claims of the non-party, at least insofar as they can be understood as its own "accelerated" claims for indemnification from the other party to the arbitration. *Caribbean Steamship Co., S.A. v. Sonmez Denizcilik ve Ticaret A.S.*, 598 F.2d 1264, 1266–67 (2d Cir.1979). In *Caribbean Steamship* the subrogated claim of a cargo owner (a non-party to the arbitration)[2] was "assigned" to the ship's charterer, a corporate affiliate of the cargo owner and also a party to an arbitration agreement with the vessel's owner via the charter party. The court held that because there was no question that the charterer could arbitrate a claim against the vessel owner for indemnification, and because the "assignment"[3] to

---

**2.** The cargo owner in *Caribbean Steamship* had previously petitioned in federal district court to compel arbitration of its claim against the ship owner but had failed, the judge having found that because the cargo owner was not itself a party to an arbitration agreement its claim was not arbitrable. It was only after this unsuccessful attempt to compel arbitration that the "assignment" at issue in *Caribbean Steamship* was made. The prior explicit judicial ruling that the third party's claim was not arbitrable if asserted by the third party itself makes the *Caribbean* case almost exactly on point with the present one.

**3.** The holding in *Caribbean Steamship* rested not on the self-styled "assignment" of the cargo claim, which in any event was somewhat fictive in the circuit court's view because "the 'assignment' ... was primarily not a grant of rights, but rather imposed an obligation on the charter-

er to assert the 'assigned' claim for [a third party's] account." *Caribbean Steamship*, 598 F.2d at 1265. Instead, the holding in *Caribbean* depended on the finding that the "assignee" charterer could assert an accelerated indemnification demand for the cargo loss against the vessel owner in the arbitration since a claim for indemnification would be a dispute within the arbitrators' jurisdiction. *Id.* at 1267.

Thus, in the present case, the fact, as admitted by Hess, that HOVIC did not formally assign its cargo claim to Hess is immaterial. Like the charterer in *Caribbean Steamship* who was permitted to assert the cargo owner's claim in the arbitration as an accelerated demand for indemnification against the vessel owner, Hess had an at least potential liability to the cargo owner, and a consequent potential claim for indemnification that was assertable against Krupp in the arbitration. *See text infra.*

the charterer obliging it to press a claim for cargo damage had its basis in the charterer's own liability to the cargo owner, the cargo damage claim could be asserted in the arbitration because it was "in effect" a "somewhat accelerated" claim for indemnity. *Id.* at 1267.

Similarly, in the present case, it was within the scope of the arbitrators' power to make Hess an award for HOVIC's loss because what they were doing in effect was deciding Hess's accelerated claim for indemnification. Krupp has not disputed Hess's theoretical right to have asserted an indemnification claim against it in the arbitration for obligations to HOVIC arising out of the cargo loss. Krupp also cannot seriously question that Hess indeed had a potential liability to HOVIC for the missing cargo. In the lawsuit that Hess originally initiated against Krupp (which was later compelled to arbitration), Hess's claim was precisely one for indemnification of its obligations to HOVIC. Moreover, in the answer that Krupp had filed in this lawsuit before the case was removed to arbitration, although Krupp asserted numerous defenses, it never contended that Hess had no obligations to HOVIC giving rise to an indemnification obligation on its own part.

Perhaps anticipating the court's ruling here, Krupp argues, citing *Hercules, Inc. v. Steven Shipping Co., Inc.*, 698 F.2d 726 (5th Cir.1983) and *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901 (2d Cir. 1965), that Hess was not entitled to assert HOVIC's claim because its indemnity obligation had never ripened insofar as it had never actually been adjudged liable to HOVIC. The alleged "unripeness" of the indemnification obligation is insufficient to remove this case from the rule of *Caribbean Steamship.* Indeed, this same "ripeness" argument was unsuccessfully made in *Caribbean Steamship. Caribbean Steamship, supra,* at 1267 & n. 2. There, the court dealt with the potential unfairness of allowing such "accelerated" claims for indemnification by making it clear that where such "accelerated" claims were presented to the arbitrators, the shipowner must be permitted to assert, in addition to his own defenses to the indemnification

demand, any defenses that the charterer could have asserted against the cargo owner. *Id.* at 1267. *See also Caribbean Steamship Co., S.A. v. Sonmez Denzcilik ve Ticaret,* 677 F.2d 254 (2d Cir.1982) (*per curiam*) (confirming arbitration award in which the arbitrators had considered charterer's "accelerated indemnification" claim and ultimately denied such claim on its merits, the arbitrators finding that charterer in fact had no liability to cargo owner such as to trigger indemnification obligations between vessel owner and charterer.) If, in the present case, Krupp failed to assert such defenses in the arbitration as Hess would have had against HOVIC this is its own fault. Krupp was sufficiently on notice that Hess intended to submit to the arbitrators HOVIC's cargo loss claim to have prepared such defenses.

The court having found no grounds to upset the arbitrators' award to Hess for the HOVIC cargo damage, either by their alleged manifest disregard of the law or in their claimed overstepping of the scope of their authority, Krupp's petition to vacate the award is denied. Hess's cross-petition to confirm its award pursuant to 9 U.S.C. section 9 is correspondingly granted, the court having found no defect in the award such as to justify its vacation or modification as set forth in sections 10 and 11 of 9 U.S.C.

■ Hess's request for attorney's fees, utterly unsupported by statutory authority, is denied, however. Krupp's petition to vacate the Hess award presented extremely difficult questions about the scope of an arbitrator's authority to determine the claims of a non-party to an arbitration depending on the nature of the non-party's relationship with a party to the arbitration. Clearly Krupp's petition was not so frivolous and vexatious or utterly without merit as to justify an exceptional award of attorney fees under the court's equitable powers. *National Association of Letter Carriers v. United States Postal Service,* 590 F.2d 1171, 1178–79 & n. 11 (D.C.Cir. 1978). *See also United Steelworkers of America v. Ideal Cement Co.,* 762 F.2d 837 (10th Cir.1985).

b. *Solidarity's Cross–Petition to Confirm in Part and Modify in Part the Arbitration Award, or in the Alternative to Confirm it.*

Solidarity Carriers, the owner of the M/V Baron Venture has petitioned for modification of the arbitrators' award on an issue completely unrelated to the dispute between Hess and Krupp discussed above.[4] Finding Krupp to have been at fault in the ROB petroleum incident because it ordered the vessel to set sail for Africa before all the cargo had been removed, the arbitrators held that Krupp was obliged to indemnify Solidarity for the settlement amount it had paid out to HOVIC. The panel reduced the award to Solidarity, however, by the amount of the "expenses which Krupp would have reasonably incurred" had it discharged the crude as was its obligation. This reduction in Krupp's indemnification obligation was effected notwithstanding the arbitrators' observation that the head time charter between Solidarity and Krupp had been executed on the New York Produce Exchange Form, clause 8 of which obliged Krupp to load, stow, trim, and discharge the cargo at its own time and expense. (Award at 16–17).

Solidarity argues that by failing to assess Krupp for the full amount that Solidarity had paid out to HOVIC, plus the attorney's fees incurred in that dispute, the arbitrators' decision was in manifest disregard of applicable law. Federal courts in similar contexts have held that a charterer's indemnification obligations to a vessel owner must be paid in full and are to include the attorney's fees incurred by the indemnitee. *Nichimen Company v. M/V Farland,* 462 F.2d 319, 333 (2d Cir.1972); *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009 (2d Cir.1972); *Travelers Indemnity Co. v. S.S. Polarland,* 418 F.Supp. 985 (S.D.N.Y.1976). *See also Seguros Banvenez, S.A. v. S.S. Oliver Drescher,* 587 F.Supp. 172, (S.D.N.Y.1984), *rev'd on other grounds,* 761 F.2d 855 (2d Cir.1985). Solidarity relies as well in its claim of "manifest disregard" on the plain terms of the charter party whereby Krupp was to bear all discharge costs.

■ At the very least, Solidarity argues, modification is called for under section 11 of the Federal Arbitration Act which permits modification or correction of an award in the event of an evident material miscalculation or an evident material mistake in the items and entities referred to in the award. The arbitrators clearly cannot have meant to decrease the indemnification award to Solidarity by the costs Krupp would have sustained had it in fact discharged all of the cargo, contends Solidarity, since they had already stated that costs of discharge under the charter party were Krupp's responsibility.

Solidarity's application to modify the arbitration award to compensate it for the full amount of the settlement made to HOVIC must be denied. To begin with, whether or not they were correct in doing so, the arbitrators clearly intended to reduce Solidarity's indemnification award by the amount of discharge costs Krupp would have incurred had it let out the full cargo. The reduction simply cannot be characterized as a "material miscalculation of figures" or "an evident material mistake in [a] description." Thus, Solidarity's invocation of section 11 of the Arbitration Act is disingenuous.

■ Solidarity's more substantial argument is grounded in the arbitrators' alleged "manifest disregard" of applicable law. The arbitrators' decision to reduce Krupp's liability to Solidarity by the expenses it would have incurred had it fulfilled its obligations, or their failure to award Solidarity

---

4. In its memorandum in opposition to Solidarity's cross-petition to modify or correct the award, Krupp also "cross-petitioned" to vacate that aspect of the award granting Solidarity indemnification against Krupp. Krupp contended that the panel's decision to find in Solidarity's favor and reject its own arguments pertaining to the allegedly defective quality of the cargo was irrational and was inconsistent with other aspects of the decision, and that this warranted vacation of the award to Solidarity. Insofar as this can even be considered a petition to vacate the Solidarity award, Krupp's application is nonetheless without merit. Krupp has made no showing that the limited grounds for refusing to confirm an arbitration award are in any way present but has shown merely its own grounds for disagreement with the arbitrators.

the attorney's fees expended in defending HOVIC's suit, do not, however, reflect the extreme "manifest disregard" of the law sufficient to upset an arbitration award. *See Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551 (2d Cir.1985); *Siderius, Inc. v. M.V. Ida Prima*, 613 F.Supp. 916 (S.D.N.Y.1985). Wilfull "manifest disregard" of the law justifying vacation or modification of an arbitration award is quite distinct from mere mistake of law or contractual misinterpretation on the part of the arbitrators. In contrast to "manifest disregard," such mistake or misinterpretation provides no basis for upsetting the arbitrators' decision. An arbitration award having any conceivable rational basis must be upheld even if the arbitrator misinterpreted law or facts. *Sofia Shipping Co., Ltd. v. Amoco Transport Co.*, 628 F.Supp. 116 (S.D.N.Y.1986); *International Longshoremen's Association v. West Gulf Maritime Association*, 605 F.Supp. 723 (S.D.N.Y.1985), *aff'd* 765 F.2d 135 (2d Cir.1985); *MCT Shipping Corp. v. Sabet*, 497 F.Supp. 1078 (S.D.N.Y.1980). Even when in the reviewing court's view, the arbitrators' opinion is clearly erroneous in both logic and result, the award will not be vacated for a mistaken interpretation of contract or of law. *Cobec Brazilian Trading and Warehousing Corp. of U.S. v. Isbrandtsen*, 524 F.Supp. 7 (S.D.N.Y.1980). *See also Americas Insurance Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 66–67 (2d Cir.1985); *Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551 (2d Cir. 1985).

The arbitrators' decision to reduce Solidarity's award by the costs Krupp would have incurred had it discharged the oil in the Virgin Islands is surely somewhat curious in light of their simultaneous acknowledgment that under the Krupp/Solidarity charter party, expenses incurred in cargo discharge were to be borne by Krupp. The court can fathom some colorable basis for this reduction, however, in the fact that Solidarity's settlement with HOVIC may not have adequately taken into account certain physical characteristics of the cargo, "basically typical Sarir crude" though it was (award at 14), which made its discharge unusually difficult and which difficulties were not fairly attributable to either the vessel or the charterer. Whatever other reasons the panel might have had for making the reduction in Solidarity's award the court can only guess, for the arbitrators neither supplied a clear reason nor were they so required. *Trans–Asiatic Oil Ltd. S.A. v. UCO Marine International Ltd.*, 618 F.Supp. 132 (S.D.N.Y.1985). Considering the complicated nature of the underlying events, the relevant contracts, and the various claims and cross-claims among the parties, however, the court in reviewing the award finds it rational and equitable, and certainly not infected by the "manifest disregard of applicable law" that Solidarity detects. In any event, having agreed to arbitration, Solidarity must rest content with the arbitrators' decision here, notwithstanding any possible technical imperfections in the justice bestowed.

Accordingly, the court having found no grounds to vacate, modify or correct the arbitration award with respect to Solidarity, this petition is denied and Solidarity's application in the alternative to confirm the award is granted.

*Conclusion*

In accordance with the foregoing, the petition of Krupp to vacate the arbitrators' award with respect to Hess is denied, and Hess's application to confirm this award is granted. Hess's motion for attorney's fees in connection with the petition is denied. Solidarity's petition to modify or correct the arbitrators' award is denied, and its petition in the alternative to confirm the award is granted.