**In the Matter of the Petition of TRANSROL NAVEGACAO S.A., Petitioner,**

**and**

**Redirekommanditselskaber Merc Scandia XXIX, Respondent,**

**To Vacate or Modify an Award of Arbitrators, Redirekommanditselskaber Merc Scandia XXIX and River Plate Trading, Shipping and Salvage Corp.**

No. 90 CIV. 7292 (KMW).

United States District Court, S.D. New York.

Dec. 11, 1991.

John E. Greenwood, Maddy, Dalton & Lion, New York City, for petitioner.

Richard V. Singleton, II, Healy & Baillie, New York City, for respondent.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

On October 14, 1991, this Court issued an Order denying Petitioner's petition to vacate the arbitrator's award and granting Respondent's petition to confirm the award. This opinion states the reasons for that Order.

## BACKGROUND

The events leading to this case involve three parties:[1] Rederikommanditselskaber Merc Scandia XXIX ("Mercandia"), the Owner of the Mercandian Queen II, the ship in question; River Plate Trading Shipping and Salvage Corp. ("River Plate"), the Charterer of the ship; and Transrol Navegacao S.A. ("Transrol"), the Guarantor of the Charter agreement between Mercandia and River Plate. Mercandia is a Danish corporation; River Plate is a Liberian Corporation; and Transrol is a Brazilian Corporation. The Court has jurisdiction pursuant to the admiralty jurisdiction of this Court and 9 U.S.C. §§ 201–08, implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. This litigation is between Mercandia and Transrol.

On June 8, 1984, Mercandia chartered the Mercandian Queen II to River Plate. The charter provided that all disputes would be resolved through arbitration in New York. On June 19, 1984, Transrol guaranteed to Mercandia the fulfillment of the charter. The Mercandian Queen grounded at Ilo, Peru on November 15, 1984 and was damaged. River Plate and Transrol denied liability for the damage. On May 13, 1985, an addendum was added to the charterparty, stating that in the event that there was no amicable resolution of rights or liabilities arising from the June 1984 grounding, those rights and liabilities would be determined in arbitration in New York. In May of 1986, Mercandia demanded arbitration. Both River Plate and Transrol initially agreed to attend the arbitration. Transrol's Verified Cross-Petition to Confirm Arbitration Award, Ex. 7. Transrol subsequently failed to produce adequate security preliminary to the arbitration, and decided not to attend. Mercandia then arrested a Transrol vessel in France to obtain security for its claim; the vessel was released in exchange for a $400,000 bank guarantee from Transrol.

The dispute then shifted to the French courts, where Transrol filed a petition to vacate the security acquired by Mercandia. The Court of Commerce of Salon de Provence found that because Transrol was the owner and controller of River Plate, because Mercandia had been dealing with Transrol in the negotiation of the charter, and because maritime corporate structures often conceal the real party's identity, it had no difficulty piercing the corporate veil in this case and holding Transrol liable to Mercandia as a principal. Judgment of August 27, 1986 (*S.A. Transroll [sic] Navegacao v. La Societe Mercandia Rederiene*) Court of Commerce of Salon de Provence (Respondent's Notice of Cross–Motion to Confirm the Arbitration Award and of Motion for Summary Judgment [hereinafter "Resp.'s Cross–Motion"], Ex. 10, *translation*, at 5). It thus denied the petition to vacate the seizure.

On appeal to the Court of Appeals of Aix–en–Provence, Transrol argued that it was not liable and that, in any case, Mercandia should not be permitted to litigate in court, in light of the arbitration agreement

1. The Court's identification of "three" parties should not be interpreted to have any implications about the soundness of Respondent's "alter ego" theory.

governing the Charterparty. The French appellate court did not reach the merits of the case on liability, but concluded only that Transrol had the right to avail itself of the arbitration clause in the agreement between River Plate and Mercandia. In other words, the Court stated that Transrol had the right to have this dispute resolved through arbitration in New York, rather than through litigation in the French court. Judgement of March 5, 1987 (*S.A. Transroll Navegacao v. La Societe Mercandia Rederienne*), Court of Appeals of Aix–en–Provence (Resp.'s Cross–Motion, Ex. 11, translation at 6–7). On this ground, it reversed the lower court and granted the petition to vacate seizure.

Mercandia recommenced arbitration in New York. Mr. Armand Pare, the attorney who had represented both River Plate and Transrol in negotiations preliminary to the first arbitration, attended the second arbitration in New York. In this round, however, he officially appeared as counsel for River Plate only; Transrol officially failed to appear at the New York arbitration. The arbitration Panel found that River Plate was liable for $432,401.55, and that Transrol was jointly liable for that amount. Certificate of Arbitration Award at 2, ¶ 5, Resp's Cross–Motion, Ex. 14. It found Transrol liable on the ground that:

> The record supports the finding made independently in a French lower court that Transrol was the real party in interest and an active participant in the creation, administration and multile extension of the Charter Party. Charterer's claim that the extensions were negotiated without Transrol's *de facto* knowledge and consent is not credible in view of Transrol's participation and apparent control of the vessel throughout the entire period of the charter.

*Id.* The arbitration panel found that Transrol was not rendered immune from the arbitrator's award merely by its refusal to appear officially at the arbitration.

Transrol now petitions this court to vacate the arbitrator's award against it. Mercandia, respondent before this court, opposes Transrol's petition and cross-peti-

tions this court to confirm the arbitrator's award; Mercandia cross-moves in the alternative for summary judgment on Transrol's liability to Mercandia under the Charter and the guarantee. For the reasons stated below, the Court denies Transrol's petition and grants Mercandia's cross-petition. Mercandia's motion cross-motion for summary judgment need not be addressed.

## DISCUSSION

There is a strong and "liberal" federal policy favoring arbitration agreements. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985), *quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Indeed, the centerpiece of the Arbitration Act renders agreements to arbitrate maritime transactions enforceable. 9 U.S.C. § 2. This policy is especially weighty in international maritime transactions, where the litigants face potential difficulties in finding an acceptable forum, the courts face equal difficulties in assessing applicable law, and arbitrators have developed special expertise. Congress has expressed its favor for arbitration in international maritime disputes by enacting 9 U.S.C. §§ 201–08, implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

Transrol does not deny the federal court's policy in favor of arbitration, nor does it deny the existence of an arbitration clause in this case. Rather, it argues that; (i) Transrol was not a signator to the arbitration agreement and did not attend the arbitration; (ii) under *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.,* 312 F.2d 299 (2d Cir.), *cert. denied, Eastern States Petroleum Corp. v. Orion Shipping & Trading Co.,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963), a court and not an arbitrator must decide whether a non-signator is subject to an arbitration agreement; and that, therefore, (iii) the arbitrator's award against Transrol should be vacated.

## I

Transrol's argument is unsound for several reasons. First, *Orion* must now be understood in light of *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 305, —— L.Ed.2d —— (1991). The Second Circuit qualified *Orion* in *Gvozdenovic,* holding that "[a]lthough a party is bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct." *Gvozdenovic,* 933 F.2d at 1105, *citing Teamsters Local Union No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 42 (3d Cir.1985) *and Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228 (2d Cir.1982). At a minimum, *Gvozdenovic* stands for the proposition that when an agreement to arbitrate may be implied from conduct of a non-signator, that non-signator may not later assert the invalidity of the arbitral award based on its non-signatory status. The applicability of the *Orion* rule thus depends on whether an agreement to arbitrate was implied by Transrol's conduct.

We find that an agreement to arbitrate may be implied from Transrol's conduct in the French courts. Transrol asserted that Mercandia could not proceed against it in French litigation, in light of the arbitration agreement of May 1985. It asserted that the seizure was improper because it violated Transrol's right to resolve disputes concerning this matter through arbitration. The French appellate court accepted this argument and therefore vacated the seizure. In essence, Transrol requested the appellate court to vacate the seizure and let the dispute be resolved through arbitration. Such a request implied that Transrol regarded itself as a party to the arbitration and that it intended to have the dispute arbitrated; at very least it implied that Transrol was agreeable to arbitration. The *Orion* rule is thus inapplicable, and Transrol's non-signatory status does not undermine the validity of the arbitrator's award against it.

We recognize that *Gvozdenovic* is susceptible of various interpretations, and we therefore pause to explain further why this application is appropriate. *Gvozdenovic* was an action by union members who argued they were not bound to accept the results reached in arbitration, which was undertaken pursuant to an arbitration clause in a collective bargaining agreement. Although the union had signed the arbitration agreement, and although it had sent representatives, many of the union members were not members of the union when it entered the arbitration agreement. The Court held that notwithstanding their non-signatory status, the union members had sent representatives to arbitration and had thus indicated their intention to arbitrate. *Id.* at 1105.

The Second Circuit explicitly distinguished *Gvozdenovic* from *Orion* on the ground that this was a labor case and *Orion* was a commercial case. *Id.* This suggests at first glance that perhaps in the case at bar, *Gvozdenovic* is inapplicable. However, the language of *Gvozdenovic,* the principle it applies, and even its explanation of the labor/commercial distinction it uses to distinguish *Orion,* lend support to a broader view of the case's significance.

First, *Gvozdenovic* states as its foremost rationale for holding the union members to the arbitration agreement that their "conduct manifested a clear intent to arbitrate the dispute." *Id.* We take it that the principle underlying this view is that where parties intend to arbitrate, it is not unjust to expect them to arbitrate, and where, in their conduct, they manifest that intent to their opposing party who relies on that manifestation of intent, and proceeds to dispute resolution through arbitration, it is unjust to discredit the arbitration. Here, there is no question that Transrol initially intended to arbitrate in 1986. Later, when it disliked having its ship seized, it represented itself as having the right to take this issue to arbitration. It clearly intended arbitration at that time. Moreover, in both cases it led Mercandia to believe that if it proceeded via arbitration, Transrol would engage in dispute resolution; in the latter case, it led Transrol to believe that it was the only way it would proceed.

Second, it is important to take the Second Circuit's distinction between labor and commercial cases in the context of its entire discussion. "Unlike a standard commercial contract, a collective bargaining agreement binds both those members within a bargaining unit at the time the agreement is made as well as those who later enter the unit." *Id., citing J.I. Case Co. v. NLRB,* 321 U.S. 332, 335-36, 64 S.Ct. 576, 579, 88 L.Ed. 762 (1944). This sentence explains why it is more common in labor cases that a non-signator may engage in behavior that implies agreement to arbitrate; the behavior includes joining a Union that already has an agreement to arbitrate, and sending representatives to arbitration. This suggests, however, that the relevant distinction is not the *subject-matter based distinction* between labor cases and commercial cases, but, as the court stated earlier, the *conduct-based distinction* between cases involving conduct implying agreement, and cases not involving conduct implying agreement. As a general matter, cases in the former category would more typically involve labor matters than commercial matters, and to this extent the labor/commercial distinction is applicable, but to the extent that particular cases depart from this general pattern, the conduct-based distinction, and not the subject-matter distinction, is important. This interpretation is bolstered by the fact that the Court went on to note that there will be many labor cases in which the *Orion* rule still holds. Id. at 1105-06.

Third, we recognize that in *Gvozdenovic* the parties had sent their representatives. Transrol asserts here that it did not send its representative and that it did not appear. However, this argument misses the point of *Gvozdenovic,* which was that appearance was relevant as evidence of agreement to arbitrate, and even then it was only part of the evidence. It is true

that evidence of appearance is lacking in this case, but there is ample evidence of agreement to arbitrate in Transrol's statement to the French court of appeals. Although this does not affect the Court's holding, we point out that Transrol is very closely allied with River Plate, both of whom are represented by the same lawyer, Armand Pare.

For all of these reasons, we hold that *Orion* does not undercut the validity of the arbitrator's award against Transrol.

## II

Assuming, *arguendo,* that this case falls outside of *Gvozdenovic* and within *Orion,* we nevertheless would hold that Transrol cannot have the arbitrator's award against it vacated by denying that it is bound by the arbitration agreement. We hold that Transrol is precluded by the position it took in the French courts from maintaining here that it is not bound by the arbitration agreement.[2]

■ The doctrine of "preclusion of inconsistent positions" prevents litigants from playing "fast and loose" with the courts. *Long Island Lighting Co. v. Transamerica Delaval, Inc.,* 646 F.Supp. 1442, 1447 (S.D.N.Y.1986), *quoting* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405[8]. The rules governing preclusion of inconsistent positions, "as compared to the occasionally intricate rules of preclusion by judgment, ... do not provide any refined or highly developed principles. The concern is to avoid unfair results and unseemliness. This concern is informed by all the traditional common law views of fair dealing that might be expected." 18 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure,* § 4477 at 779 [hereinafter "Wright & Miller"].

---

**2.** Mercandia asserts, in addition, that Transrol is collaterally estopped by the French court's decision from arguing in this Court that it is not party to the arbitration agreement. We believe the doctrine of collateral estoppel confuses rather than clarifies in this case. The French appeals court's terse opinion states only that Transrol has the right to avail itself of the arbitration agreement, and arbitrate, rather than litigate. It does not say why; it does not say explicitly whether Transrol is a party to the arbitration agreement; and it does not say that Mercandia has the right to arbitrate against Transrol. The issue of whether Transrol is bound to arbitrate in New York was thus not decided.

Under certain circumstances, preclusion of inconsistent positions is a variation of equitable estoppel. *Id.* This version of the doctrine requires *privity, reliance,* and *prejudice;* " '[t]he party seeking to invoke the estoppel must have been an adverse party in the prior proceeding, must have acted in reliance upon his opponent's prior position, and must now face injury if a court were to permit his opponent to change positions.' " *Merrill Lynch, Pierce, Fenner & Smith Incorporated v. Georgiadis,* 903 F.2d 109, 114 (2d Cir.1990), quoting *Konstantinidis v. Chen,* 626 F.2d 933, 937 (D.C.Cir.1980). While there is some question about the propriety of the general doctrine of preclusion of inconsistent positions where the allegedly inconsistent party did not prevail in its first proceeding, "[v]irtually all courts agree that equitable estoppel may be applied to preclude a party from contradicting testimony or pleadings successfully maintained in a prior judicial proceeding." *Chen,* 626 F.2d at 937, *citing Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895).

■ Transrol is trying to play "fast and loose" with the judicial system, and is certainly trying to undermine "the integrity of the relationship between the parties." *Chen,* 626 F.2d at 933. Transrol initially agreed to arbitrate with Mercandia; it then decided it would not arbitrate; it then represented to the French Court that French proceedings should be dismissed because Transrol had a right to arbitrate in New York; and then, when Mercandia tried once again to arbitrate in New York, Transrol turned around and said it was unwilling to arbitrate, knowing, however, that its counsel, Mr. Pare, would participate in arbitration (nominally as the representative of River Plate alone). Now Transrol asks this court to undo the work of the arbitrators and to declare that, after all, Transrol is not party to the arbitration clause. In short, Transrol avoided liability in the French courts by arguing that arbitration *is* the appropriate method to resolve this dispute, and now it seeks to avoid liability in this court by arguing that arbitration *is not* the appropriate method to resolve this dispute. To permit Transrol to vacate the arbitrator's award under these circumstances would be to condone inequitable manipulation of courts and litigants of precisely the sort that the doctrine of equitable estoppel is designed to bar.

We note that all of the requirements listed in *Chen* are met here. Transrol prevailed in its previous suit. There is privity because the parties in the two proceedings are identical. Mercandia relied on Transrol's representation that arbitration rather than litigation was the appropriate mechanism of resolving this dispute; it went directly to arbitration in New York, rather than seeking a judicial decision on whether Transrol was a party to the arbitration. Finally, if Transrol were permitted to maintain that it is not required to arbitrate, Mercandia would be forced to conduct proceedings anew to collect on its claim against Transrol; it would be seriously prejudiced. For these reasons, we hold that Transrol would be precluded from maintaining that it was not required to arbitrate, even if, *arguendo,* the *Orion* requirement applied in this case.

We need not address Mercandia's cross-motion for summary judgment.

## CONCLUSION

For the reasons stated above, this Court denied Petitioner's motion to vacate the arbitrator's award and granted Respondent's petition to confirm the award in its order of October 14, 1991. The time to file a motion to reargue, a notice of appeal, or other motions in response to the October 14 order and subsequent judgment shall run from the date of this opinion.

SO ORDERED.