**In the Matter of ARBITRATION BETWEEN KEYSTONE SHIPPING CO., and Chas. Kurz & Co., Inc., Petitioners,**

**and**

**TEXPORT OIL COMPANY, Respondent.**

No. 91 Civ. 5794 (DNE).

United States District Court,
S.D. New York.

Jan. 27, 1992.

Peter A. Junge, Lilly Sullivan Purcell Barkan & Junge, New York City, for petitioner.

John R. Foster, Waesche, Sheinbaum & O'Regan, New York City, for respondent.

### OPINION & ORDER

EDELSTEIN, District Judge:

### BACKGROUND

Petitioner Chas. Kurz & Co., Inc. ("Kurz") owns the United States flag tanker Valley Forge (the "vessel"), which it operates through an affiliated company, petitioner Keystone Shipping Corporation ("Keystone"). In April 1991, respondent Texport Oil Company ("Texport") chartered the vessel to carry gasoline blending stocks from a United States Gulf port to an east coast port. The contract, which was signed by Kurz and Texport, but not by Keystone, provided that "any and all disputes and differences of whatever nature arising out of this Charter shall be put to arbitration" in New York. The parties agree that at all times Keystone acted as agent for its disclosed principal Kurz.

After delivery of the cargo, a dispute arose among petitioners, respondent and GATX Terminals Corporation, which stored the cargo, concerning the cargo's condition. Texport sued the vessel *in rem*, GATX, Kurz and Keystone in Texas state court. With the consent of the parties, the case was removed to the Southern District of

Texas. The case was then transferred to the District of New Jersey.

On July 2, 1991, Kurz and Keystone served a demand for arbitration on Texport. While Texport agreed to arbitrate its dispute with Kurz, it refused to arbitrate its conflict with Keystone. Texport reasoned that because Keystone did not sign the contract that contains the arbitration clause, Keystone had no right to compel arbitration. Keystone and Kurz have petitioned this Court for an order directing Texport to arbitrate its action with Keystone. Keystone also seeks a stay of its litigation with Texport pending arbitration.

## DISCUSSION

■ Section 4 of the Federal Arbitration Act (the "Act") provides that:

A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement may petition any United States District Court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. To compel arbitration under section 4, a party must establish that "(1) an arbitration agreement exists; (2) the dispute falls within the scope of the arbitration agreement ...; and (3) the dispute does not involve the making of the agreement or the failure to comply therewith." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir.1983); *see Associated Mason Contractors, Inc. v. Harrington*, 820 F.2d 31, 35 (2d Cir.1987). The parties agree that this dispute falls within the scope of a valid agreement. Texport asserts, however, that Keystone has no power to compel arbitration because it did not sign the contract containing the arbitration clause. The issue before this Court, then, is under what circumstances a party that did non sign a contract containing an arbitration clause (a "non-signatory") may still compel arbitration.

"There is a strong and liberal federal policy favoring arbitration agreements." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). The Act was intended to avoid "the costliness and delays of litigation" and to place arbitration agreements "upon the same footing as other contracts...." H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924). Nevertheless, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not so agreed to submit.'" *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir.1980) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

■ There are four circumstances in which courts apply arbitration clauses to non-signatories. First, the Second Circuit has held that "[i]n an appropriate situation, the corporate veil may be pierced and a party may be held bound to arbitrate as the signatory's alter ego." *Interocean Ship Co. v. National Shipping and Trading Corp.*, 523 F.2d 527, 537 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *see McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519 (2d Cir.1980) (non-signatory bound to arbitration agreement because contract expressly provided that companies affiliated with signatory are contractually bound); *Wren Distrib., Inc. v. Phone–Mate, Inc.*, 600 F.Supp. 1576, 1579 (E.D.N.Y.1985). Nevertheless, "corporate relationship alone does not provide a basis for allowing" a non-signatory to enforce the arbitration clause. *Fried, Krupp, GmbH v. Solidarity Carriers, Inc.*, 674 F.Supp. 1022, 1027 (S.D.N.Y.), *aff'd without opinion*, 838 F.2d 1202 (2d Cir.1987). The corporate bond necessary is one where "the parent corporation so dominates and controls the affairs of its subsidiary that the subsidiary cannot be said to have any independent existence or will of its own." *Coastal States Trading, Inc. v. Zenith Navigation, S.A.*, 446 F.Supp. 330, 336–37 (S.D.N.Y.1977). Moreover, "absent findings of fraud or bad faith, a corporation ... is entitled to a presumption of separateness from a sister corporation ...

even if both are controlled by the same individuals." *American Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 677 (2d Cir.1974). Keystone has not alleged that it enjoys the type of relationship with Kurz that justifies piercing the corporate veil. Keystone alleges only that the companies are affiliated. A lone allegation of mere affiliation, however, does not suggest, let alone prove, that Kurz controls Keystone or that they are essentially one entity. Accordingly, this Court cannot pierce the corporate veil and permit Keystone, a non-signatory, to enforce the arbitration agreement between Kurz and Texport.

■ Second, a non-signatory may enforce an arbitration agreement if it and a signatory to the agreement are both parties to a common bill of lading that expressly incorporates another contract's arbitration clause. *See Import Export Steel Corp. v. Mississippi Valley Barge Line Co.*, 351 F.2d 503, 506 (2d Cir.1965); *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir.1960); *Golden Eagle Canada v. S.S. Marilia*, No. 80 Civ. 1673, 1984 WL 815 (S.D.N.Y. Aug. 24, 1984). In support of its motion, petitioners cite cases that allow non-signatories to enforce arbitration clauses in other contracts if they hold bills of lading that incorporate these arbitration clauses by reference. *See, e.g., Bunge Corp. v. M/T Stolt Hippo*, 1980 A.M.C. 2611 (S.D.N.Y.1979); *Lowry & Co. v. S.S. Le Moyne D'Iberville*, 253 F.Supp. 396 (S.D.N.Y.1966), *appeal dismissed*, 372 F.2d 123 (2d Cir.1967). These cases do not support petitioners' argument, however, because Texport and Keystone do not enjoy any contractual relationship. No bill of lading or other agreement binds these parties. Accordingly, Keystone cannot compel Texport to arbitrate this dispute under a bill of lading theory.[1]

■ Third, the Second Circuit has held that "although a party is bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct." *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 305, —— L.Ed.2d —— (1991). While the court based this rule on an arbitration clause in a labor contract and not a commercial agreement, at least one court has found that the rationale extends to commercial contracts. *See In re Transrol Navegacao S.A.*, 782 F.Supp. 848 (S.D.N.Y. 1991). Under *United Air*, then, "when an agreement to arbitrate may be implied from conduct of a non-signator, that non-signator may not later assert the invalidity of the arbitral award based on its non-signatory status." *Id.* For instance, in *Transrol*, Judge Wood found that respondent had agreed to arbitrate—despite never having signed the contract containing the arbitration clause—because it previously had agreed to arbitrate in France and only later refused to arbitrate in New York. *See id.* Texport, however, never indicated an intention to arbitrate. In fact, Texport has consistently refused to arbitrate its dispute with Keystone. Keystone may not, therefore, compel arbitration under an implied conduct theory.

■ Fourth, under certain circumstances, a non-signatory may enforce an arbitration agreement contained in a con-

---

1. Petitioners apparently cite these cases for the proposition that a broad arbitration clause automatically binds non-signatories if the dispute falls within the scope of the clause. In their memorandum of law, petitioners state that "[b]road-based Charter Party agreements to arbitrate 'all disputes ... arising out of this charter binds not only the signatories, but all those who subsequently consent to be bound by its terms.'" Petitioners' Memorandum of Law, at 6 (quoting *Lowry & Co. v. S.S. Le Moyne D'Iberville*, 253 F.Supp. 396 (S.D.N.Y.1966)). Petitioners fail to recognize that these decisions involve situations where the non-signatory and signatory had a separate contractual relationship that incorporated another contract's arbitration clause by reference. No such relationship exists here. Moreover, it is clear that "a non-party to an arbitration agreement cannot 'make an arbitrable claim out of a non-arbitrable one by assigning it to a person having a broad any dispute arbitration contract with the party against whom the claim lies.'" *Fried, Krupp, GmbH v. Solidarity Carriers, Inc.*, 674 F.Supp. 1022, 1027 (S.D.N.Y.1987) (quoting *Caribbean S.S. Co., S.A. v. Sonmez Denizcilik ve Ticaret A.S.*, 598 F.2d 1264, 1266–67 (2d Cir.1979)).

tract that it signed on behalf of its principal. *See Barrowclough v. Kidder Peabody & Co.,* 752 F.2d 923, 938–39 (3d Cir. 1985); *Fisser v. International Bank,* 282 F.2d 231, 234–35 (2d Cir.1960); *Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.,* 658 F.Supp. 809, 813 (S.D.N.Y.1987). Courts apply "common law principles of agency ... to maritime contracts and obligations arising under the [Act]." *Getty Oil Co. v. Norse Management Co. (PTE) Ltd.,* 711 F.Supp. 175, 176 (S.D.N.Y.1989); *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir.1980).[2] Signing an arbitration agreement as an agent for a disclosed principal is not sufficient to render the agent a party to the arbitration clause. *See Flink v. Carlson,* 856 F.2d 44, 46 (8th Cir.1988); *Interocean Shipping,* 523 F.2d at 538; *Overseas Oil Transp. Corp. of Panama v. Phibro Energy, A.G.,* No. 88 Civ. 1302, 1990 WL 130773, LEXIS 11763 (S.D.N.Y. Sep. 7, 1990); Restatement (Second) of Agency § 320 (1958). Because Keystone signed the agreement for its disclosed principal, Kurz, Keystone is not a party to the agreement and has no authority to enforce the arbitration clause.

## CONCLUSION

For the foregoing reasons, Keystone's and Kurz's petition to compel arbitration is denied.

SO ORDERED

---

**2.** Two cases have held that traditional agency principles do not govern an arbitration analysis involving entities that enjoy a parent-subsidiary relationship. *See Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.,* 725 F.Supp. 1303, 1310 (S.D.N.Y.1989), *aff'd in part and vacated in part on other grounds,* 909 F.2d 698 (2d Cir.1990); *Kashfi v. Phibro–Salomon, Inc.,* 628 F.Supp. 727, 735 (S.D.N.Y.1986). These courts use the alter ego doctrine to determine when a non-signatory may enforce an arbitration agreement. Because Keystone and Kurz do not enjoy a parent-subsidiary bond, however, traditional agency law controls the arbitration analysis.