**Frank MURRAY, Plaintiff,**

v.

**DOMINICK CORPORATION OF CAN-ADA, LTD., John S. Jenkins, and John Halsey, Defendants.**

No. 85 Civ. 6121 (RWS).

United States District Court, S.D. New York.

April 1, 1986.

Brown, Raysman & Millstein, New York City, for plaintiff; Peter Brown, Sylvia Khatcherian, Henry Abelman, of counsel.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant Dominick Corp. of Canada, Ltd. and Jack S. Jenkins; Joseph G. Riemer, III, Paul Windels, III, of counsel.

Griggs, Baldwin & Baldwin, New York City, for defendant John Halsey; Douglas W. Brandrup, Robert J. Woolsey, of counsel.

### OPINION

SWEET, District Judge.

In this action, Frank Murray ("Murray") seeks to recover $1,424,000 in compensatory damages and $2,000,000 in punitive damages based on the alleged fraud, breach of fiduciary duties and gross negligence of Dominick Corporation of Canada, Ltd.

("Dominick Canada"), John Jenkins ("Jenkins") and John Halsey ("Halsey") with regard to their handling of his securities accounts. The defendants have brought a motion for summary judgment based on the doctrine of *res judicata.* For the following reasons the motion of Halsey will be granted, and the motion of Dominick Canada and Jenkins denied.

**The Complaint**

In his complaint, Murray alleges the following facts. In November, 1979, Murray went to the offices of Dominick and Dominick, Inc. ("DDI"), located in New York City, seeking advice with respect to his portfolio of securities. At DDI, he met with defendant Halsey, a registered stockbroker and was introduced to Jenkins by telephone. Jenkins was the president and chairman of the Board of Dominick Canada and was represented to be an expert on Canadian securities. Following these discussions, Murray opened a cash account in the amount of $10,000.

Several weeks later, Jenkins telephoned Murray and recommended that he open a margin account by delivering his portfolio of securities to Halsey. By January, 1980, Murray delivered securities and cash valued at approximately $120,000 and directed that $60,000 be placed in an account managed by Halsey and $60,000 in an account to be managed by Jenkins. Murray alleges that some of these securities, which were jointly held by himself and his son, were not to be deposited in any account but merely retained until substitute securities could be delivered. He asserts that Halsey and Jenkins ignored these instructions and that all these securities were transferred to Canada and deposited there.

During the next year, Murray alleges that he received frequent telephone calls from Jenkins for the purpose of recommending securities transactions but without disclosing full information regarding the nature of the securities involved. Murray asserts that these transactions were overly speculative and thus unsuited for his investment needs and goals. To pay for these additional transactions, Murray deposited additional securities worth approximately $360,000.

Murray further contends that Jenkins refused to follow his instructions with regard to account limitations and stop-loss orders. After discovering these alleged improprieties in December, 1980, Murray requested of both Halsey and Jenkins that all of his Canadian accounts and securities be returned to Dominick Investor Services Corporation ("DISC") in New York. Nevertheless he asserts that Jenkins and Halsey refused to honor this request until August, 1982, at which time his account was worth only $70,000.

**Prior Proceedings**

On October 18, 1982, Murray executed a Uniform Submission Agreement to initiate an arbitration proceeding against DDI and DISC before the New York Stock Exchange ("NYSE"). By this agreement, Murray agreed to submit the matter in controversy, as well as "all related counterclaims and/or third party claims which may be asserted" to arbitration in accordance with the rules of the NYSE. In particular, NYSE Rule 600 provides that:

(a) Any dispute, claim or controversy between a customer or non-member and a member, allied member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associated person in connection with his activities as an associated person shall be arbitrated ... as provided by any duly executed and enforceable written agreement or denial of the customer or non-member.

Murray's complaint before the NYSE arbitration panel alleged that DDI and DISC, acting alone and in conjunction with Dominick Canada, had defrauded Murray. The complaint set forth the same allegations of churning and unsuitability that appear in the complaint to this action. Moreover, the very same transactions formed the basis for the arbitration proceeding since these are the only transactions and accounts which Murray has had with either Dominick Canada, DDI or DISC. All of the alleg-

edly wrongful transactions occurred on exchanges and in the over the counter markets in Canada although account statements were issued both by Dominick Canada and DDI.

At the arbitration proceeding, DDI and DISC initially sought the dismissal of the proceeding on the basis that the New York respondents in that action, while affiliates of Dominick Canada, were separate entities and had committed no wrongdoings in connection with the transactions in Canada. In opposition, Murray argued that while Dominick Canada was not a party to the arbitration, DDI had participated extensively in the transactions by steering him to the Canadian office, by their extensive knowledge of and participation in the transactions and therefore acted as the agent of Dominick Canada.

The arbitration panel denied the motion to dismiss, held five days of hearings and then issued the following standard form award on May 23, 1983:

> And having heard and considered the proofs of the parties, have decided and determined that in full and final settlement of the above matter, respondents shall pay to claimant the sum of $50,000
> . . . .

The New York Supreme Court's decision confirming the award and denying reargument was affirmed by the Appellate Division, First Department. On July 9, 1984, Murray was paid $54,234.39 in full satisfaction of the judgment of the New York Supreme Court and executed a satisfaction of judgment on the same day.

## Discussion

Defendants Dominick Canada, Jenkins and Halsey have moved for summary judgment based on the claim that Murray has already fully and fairly litigated all claims arising out of the transactions in his accounts with Dominick Canada, DDI and DISC.[1] Since these defendants were not parties to the arbitration proceeding, they essentially seek the application of nonmutual collateral estoppel as a defense to the relitigation of certain issues by the plaintiff. *See Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); 18 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4464 (1981).

In advancing this claim of collateral estoppel, the defendants rely on several cases which state that, where a litigant has fully adjudicated the identical issues in a prior proceeding, relitigation on these issues will be barred. *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 151 N.Y.S.2d 1, 4, 134 N.E.2d 97, 99 (N.Y.1956).

In *Goldstein v. Doft*, 236 F.Supp. 730 (S.D.N.Y.1964), *aff'd*, 353 F.2d 484 (2d Cir. 1965), the plaintiff brought an action against one of the partners in a partnership claiming damages based on misrepresentations and breach of contract. As noted by the court, however, the plaintiff had earlier brought to arbitration claims based on the same transactions against the partnership and its corporate principal. These arbitration claims were disallowed in an award by the arbitration panel which was confirmed by the state court. In recognition of the fact that the second suit was merely an attempt to relitigate the same issues against the agent of the defendants in the previous action, the court held the plaintiff to be barred by the doctrine of *res judicata. Id.* at 733–34.

Similarly, in *Ritchie v. Landau*, 475 F.2d 151 (2d Cir.1973), the plaintiff brought an action against the major stockholder and president of a corporation seeking recovery for an alleged breach of oral contract. As discussed by the court, the plaintiff had also brought an action directly against the corporation for breach of the same contract. After three days of hearings the arbitration panel awarded the plaintiff

---

1. The defendants refer also to an investigation conducted by the Toronto Stock Exchange which did not disclose any violations of that Exchange's regulations. Since this administrative proceeding did not involve any adjudication of Murray's claim it does not preclude the present claim. *Venes v. School Board of District 26*, 43 N.Y.2d 520, 402 N.Y.S.2d 807, 373 N.E.2d 987 (N.Y.1978).

$200,000 in a summary award without explanation. Again the court recognized that because the subsequent judicial proceedings were based on the actions of an agent of a corporation for which there had already been a disposition, collateral estoppel would bar relitigation. *See also Lober v. Moore*, 417 F.2d 714, 716 (D.C.Cir.1969) (prior tort action against owner of taxicab barred relitigation against employee driver). These cases recognize that, where the legal relationship between two parties establishes vicarious liability for one party based on the acts of the other, a suit brought against either of the parties will foreclose a subsequent action against the other. *See Israel v. Wood Dolson Co., supra*, 151 N.Y.S.2d at 4, 134 N.E.2d at ("In cases involving the relationship of principal and agent, master and servant, or indemnitor and indemnitee, the liability of more than one party turns on, or is dependent upon, identical issues.").

■ The above cases are dispositive with regard to the present action against Halsey. Since the transactions and the accounts presented to the arbitrators are identical to those raised here, there can be no doubt that the arbitration proceeding and award against the corporate defendants DDI and DISC allowed the plaintiff a full and fair opportunity to present any claims arising out of the conduct of DDI's registered representative Halsey. Moreover, the submission agreement itself required that all claims arising out of the transaction be presented to the arbitration panel. Since the disputed transactions and accounts involved Halsey in connection with his employment as an associated person of DDI, Murray's claims against Halsey personally were within the jurisdiction of the NYSE arbitration panel and should have been raised at that time.

■ Since Dominick Canada and Jenkins were not members of the NYSE or associated persons, it is conceded that they were beyond the jurisdiction of the arbitration proceeding. Thus, as to these defendants, the motion for summary judgment depends on whether the arbitration award necessarily encompassed all issues which might be raised against them. Based on the record presented, it is not possible to conclude that the entire conduct of Dominick Canada and Jenkins were considered in the arbitrator's decision and award. Unlike the factual circumstances of the *Goldstein* and *Ritchie* decisions discussed above, the actions of Dominick Canada and its agent Jenkins cannot be deemed to be coextensive with DDI and DISC so as to preclude further litigation. These corporate parties bear no master/servant or principal/agent relationship to each other as a matter of law since they are independent corporate affiliates.

The only other basis to hold this action barred would be if the arbitration proceeding held that DDI and DISC were joint tortfeasors with Dominick Canada and Jenkins. "When two or more persons together cause injury, each is fully liable to the victim." *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 718 (2d Cir.1978). A finding of joint liability in this case would depend on a factual finding that the parties were engaged in a joint enterprise, *see Connell v. Hayden*, 83 A.D.2d 30, 443 N.Y.S.2d 383, 399–400 (N.Y.App.Div.1981), or that DDI and DISC were aiding and abetting the tortious conduct of Dominick Canada and Jenkins. *See Fisher v. Klatz*, 266 F.Supp. 180, 197 (S.D.N.Y.1967).

In his amended complaint filed in the arbitration proceeding, however, Murray asserted claims against DDI and DISC based both on theories of individual and joint liability. In the arbitration itself, each party stressed opposing characteristics of the relationship between the American and Canadian brokerage affiliates: Murray argued that the cooperation and complicity was extensive while DDI and DISC argued that they had no responsibility for the Canadian transactions. Since the arbitration award did not contain any finding that the foreign and domestic affiliates were joint tortfeasors, it does not estop subsequent litigation against Dominick Canada and Jenkins. As noted by the Honorable Charles S. Haight in a similar context:

We cannot know from the form of the arbitrator's award to what extent the arbitrators were influenced ... by the presence of factors for which [one respondent] was responsible, but for which [another] could not be. ... Where a previous arbitration award is ambiguous in respect of what issues were decided, it necessarily has limited value in subsequent litigation.

*Brownko International, Inc. v. Ogden Steel Co.*, 585 F.Supp. 1432, 1435 (S.D.N.Y. 1983).

Moreover, on the face of the complaint in this action, which must be accepted for the purposes of this motion, it appears that Jenkins had numerous discussions with Murray in the absence of Halsey, that Jenkins was the only "expert" in Canadian securities, and that he maintained sole control over the securities deposited directly in the Dominick Canada account. Since there exists a factual dispute as to whether Halsey, DDI and DISC participated in the alleged fraudulent acts by Jenkins and Dominick Canada, one cannot conclude that there exists joint and several liability.

Dominick Canada and Jenkins may attempt to establish that DDI and DISC were joint tortfeasors with regard to the injuries allegedly suffered by Murray. Should they succeed on such a defense, it would then be appropriate to credit the recovery obtained in the arbitration proceeding against any damages assessed in this one. Otherwise, Murray might obtain duplicative damages. *Cf. Bradshaw v. State of New York*, 24 A.D.2d 930, 264 N.Y.S.2d 725 (N.Y.App. Div.1965). Even if it were established here that the Canadian and American brokerage firms were joint tortfeasors, this action would not be entirely precluded by satisfaction of the prior judgment, since as noted above, there is no way to determine that the arbitration proceeding also awarded damages based on joint and several liability. The only conclusive result of the arbitration award is to exclude any further claims based on the actions and statements of DDI and DISC.

Dominick Canada and Jenkins have also moved to compel arbitration before the NYSE based on the submission agreement between Murray, DDI and DISC. As noted above, however, neither of these defendants were members of the NYSE and therefore were not contemplated by the submission agreement. Although an order to compel arbitration is not appropriate, Murray in his opposition papers has consented to arbitration of any claims against the defendants in this action if they waive any jurisdictional defenses.

**Conclusion**

The motion of Dominick Canada and Jenkins for summary judgment is denied while the motion of Halsey is granted. The complaint will be dismissed as to defendant Halsey.

IT IS SO ORDERED.