**USINA COSTA PINTO S.A. ACUCAR E ALCOOL and Usina Santa Barbara S.A. Acucar E Alcool, Plaintiffs,**

v.

**LOUIS DREYFUS SUGAR COMPANY, INC. and International Trade Development Company Limited, Defendants.**

No. 93 Civ. 2302 (SAS).

United States District Court, S.D. New York.

April 16, 1996.

Marc Z. Newman, Newman & Berger, New York City, for plaintiffs.

Bruce G. Paulsen, Nourse & Bowles, New York City, for defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge:

Defendant Louis Dreyfus Sugar Company, Inc. ("LDSC") moves for summary judgment asserting that the issues presented in the claim filed by Usina Costa Pinto S.A. Acucar e Alcool and Usina Santa Barbara S.A. Acucar e Alcool have already been decided. Alternatively, Defendant seeks an order compelling arbitration of the issues raised and/or staying the matter pending arbitration. For the reasons set forth below, Defendant's motions are granted in part and denied in part.

## I. BACKGROUND

### A. Parties and Negotiations

Plaintiffs are Brazilian sugar mills. Mr. Rubens Ometto Silveira Mello ("Mello") is President of both companies. Defendant LDSC is a Delaware corporation engaged in sugar trading with an office in New York. International Trade Development Company Limited ("Interdevco"), not a party to the present fraud action, is an English corporation and an affiliate of LDSC. Interdevco executed various agreements with Plaintiffs and was a party to an arbitration proceeding between it and Plaintiffs.

Before 1988, the Brazilian government strictly regulated sugar exports, fixing quotas and internal market prices. In 1988, for the first time, the government permitted pri-

vate exports of Brazilian sugar. All sugar exports still require a license from a governmental agency known as the Carteira de Comercio Exterior ("CACEX").

It is unclear whether representatives of LDSC or Interdevco first approached Mello to discuss a deal involving the purchase of 100,000 metric tons of granulated refined sugar. Nonetheless, on May 18, 1988, negotiations commenced when Mello met with Martin Torino of LDSC ("Torino"), Helio Franca, Sr. of LDSC's Brazilian agent, Brasfran, and Alvaro Teixeira de Mello, Intervedco's Brazilian agent. See Affidavit of Charles H. Falk ("Falk Aff."), President of LDSC, dated June 8, 1995, ¶ 10; Ex. C ¶ 6; Ex. D ¶ 9; Ex. E. In a meeting that lasted the entire day, the parties negotiated and drafted a contract whereby Plaintiffs agreed to sell Interdevco 100,000 metric tons of sugar. See Falk Aff. ¶ 11; Ex. E.

Plaintiffs allege that, at LDSC's insistence, Interdevco replaced LDSC as a party to the contract immediately prior to the execution of the agreements. LDSC allegedly explained that this was necessary to enable Plaintiffs to export large quantities of sugar unencumbered by a Brazilian regulation limiting the amount of sugar to be exported to the United States from Plaintiffs' region. See Affidavit of Rubens Ometto Silveira Mello ("Mello Aff."), President of Plaintiff corporations, dated October 23, 1995, ¶ 17. Plaintiffs claim that the actual reason behind this switch was to eliminate LDSC from the contract in light of a memorandum issued by the Brazilian Central Bank which suggested a "strong indication" of collusion on the part of LDSC in its past dealings in Brazil. See Mello Aff. Ex. A.

### B.  Contracts

Plaintiffs and Interdevco memorialized their understandings in various agreements. Mello, as a representative of Plaintiffs, and Torino, an LDSC employee, signed the original contract dated May 23, 1988 on behalf of Interdevco. Falk Aff.Ex.F. The contract provided for the purchase of two 50,000 metric ton parcels of sugar and contained certain price terms. It also included an arbitration clause stipulating that disputes arising from the contract would be settled according to the rules of the Refined Sugar Association ("RSA") in London. See Falk Aff.Ex.F, ¶ 16. LDSC was not a party to either the agreement or the arbitration clause.

By additional agreement, also dated May 23, 1988, a "Joint Account Agreement" was formalized. See Falk Aff.Ex.G. Under this Joint Account Agreement, Plaintiffs and Interdevco agreed, inter alia, that a joint account would be established where all funds and profits realized from the sales of sugar or commodity activities would be deposited. The net balances would then be divided and distributed equally between Plaintiffs and Interdevco. Thereafter, by contract dated May 1988, Interdevco sold and transferred to LDSC the sugar sold to it by Plaintiffs under the same terms and conditions contained in the contract between Plaintiffs and Interdevco.[1] See Mello Aff. ¶ 22.

By November 1988, the world market price of sugar rose above the contract price. CACEX would only grant an export license for an amount higher than the contract price, requiring Interdevco to pay Plaintiffs sums in excess of the contract price. To remedy this situation, Plaintiffs and Interdevco executed an agreement ("November Agreement") whereby Plaintiffs agreed to reimburse Interdevco for such overpayments. See Falk Aff. ¶ 22; Ex.M.

Plaintiffs failed to refund to Interdevco the overpayments it made for the first two cargoes of sugar shipped aboard the vessels EBO and HARMONY. Interdevco, in turn, failed to pay Plaintiffs the monies it owed for the second two cargoes aboard the vessels MAR COURIER and LEONOR. Plaintiffs and Interdevco eventually negotiated an agreement to resolve their disputes over the amounts each owed the other. In this agreement, dated April 7, 1989 ("April Agreement"), the parties agreed to a series of offsets and cross-payments to satisfy the sums owed one another under the various

---

**1.** Plaintiffs allege that this transfer was done "surreptitiously." (Memorandum of Law in Opposition to Motion, at 12). LDSC, on the other hand, asserts that it was understood that LDSC, and not Interdevco, was to conduct the market operations. (Falk Aff. ¶ 16).

agreements. *See* Falk Aff. ¶ 27; Exs. D, Q,. The Joint Account was cancelled by a separate agreement which was annexed to the April Agreement. Neither Plaintiffs nor Interdevco performed the April Agreement and Plaintiffs demanded arbitration. Falk Aff. ¶ 33; Ex. K.

### C. *London Arbitration*

The arbitration between Intervedco and Plaintiffs entailed six hearings before a panel of arbitrators of the RSA in London. The arbitration settled the disputes between the parties arising out of the April Agreement. LDSC representatives and employees appeared as witnesses for Interdevco. On September 6, 1991, the RSA awarded Plaintiffs $2.8 million under the April Agreement as well as an additional $1.5 million, which was eliminated following an appeal. *See* Falk Aff. ¶ 36. Interdevco paid the entire award as modified on appeal. *See* Falk Aff. ¶ 41.

### D. *Present Litigation*

Plaintiffs claim they were first alerted to the alleged Joint Account fraud at the end of the Arbitration. Plaintiffs then brought this fraud action against LDSC alleging that they were fraudulently induced into signing the Contract and the Joint Account Agreement. Plaintiffs claim they were victims of a "bait and switch" tactic in which the contracts executed by Interdevco were secretly transferred to LDSC. They claim LDSC conspired with Interdevco to have Interdevco sell the sugar to LDSC at a low price so that LDSC could keep the profits of the subsequent sale of the sugar, rather than share those profits with them. Defendants' motion to dismiss the fraud claim was denied. *See Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Company, Inc.*, No. 93–2302 (S.D.N.Y. Apr. 8, 1993) (order denying dismissal).

In its present motion, LDSC argues that Plaintiffs' fraud claim is baseless and that Plaintiffs are merely reasserting their contractual rights under the Joint Account which were covered by the arbitration clause. Accordingly, LDSC moves for summary judgment asserting that the issues presented by Plaintiffs' claim were decided by the London

Arbitration and that the claim is therefore barred.

### II. *SUMMARY JUDGMENT*

A motion for summary judgment may only be granted where there is no genuine issue of fact and the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden of demonstrating no factual dispute rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1607–08, 26 L.Ed.2d 142 (1970). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57, 60 (2d Cir.1987).

On summary judgment, the role of the court is not to try issues of fact but merely to determine whether issues exist to be tried. *Donahue*, 834 F.2d at 58 (citations omitted). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

Local Rule 3(g) of the Southern District of New York states, in pertinent part, that a party opposing a motion for summary judgment must include in its opposition papers "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." In addition, "[a]ll material facts set forth ... by the [moving party] will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." *Id.*

Plaintiffs did not file timely objections to Defendant's 3(g) statement. Two months after it was due, Plaintiffs requested permission to file a late 3(g) statement. I denied this request. *See Abu–Nassar v. Elders Fu-*

*tures, Inc.,* 1994 WL 445638 (S.D.N.Y. Aug. 17, 1994) (holding acceptance of a late 3(g) statement is discretionary); *see also Noonan v. Insurance Company of North America,* 1994 WL 114823, 1994 U.S.Dist. LEXIS 38033 at * 13–15 (S.D.N.Y. Mar. 31, 1994) (denying plaintiff's belated request to submit a 3(g) statement and deeming admitted the material facts in defendant's 3(g) statement).

Ordinarily, Plaintiffs' failure to file a timely 3(g) statement would result in the admission of all facts set forth in LDSC's 3(g) statement. *See* Rule 3(g). However, Plaintiffs have timely filed affidavits and a brief in opposition to LDSC's motion which challenge certain allegations and factual claims of LDSC. These submissions assert that there is a genuine issue of material fact to be tried. Therefore, the facts contained in LDSC's 3(g) statement are admitted *to the extent they are not contradicted by Plaintiffs' brief, affidavits and other timely submissions.*[2] Although Plaintiffs' tardy Rule 3(g) statement is rejected, to the extent that their prior submissions refute the material facts and allegations advanced by LDSC, such submissions will be considered. *Dawson Industries, Inc. v. Affiliated FM Insurance Co.,* 145 F.R.D. 327 (S.D.N.Y.1992) (affidavit submitted by non-moving party was sufficient to establish genuine issue of material fact without submission of Rule 3(g) statement). Undisputed facts presented in LDSC's 3(g) statement which are not addressed by Plaintiffs' timely submissions will be deemed admitted.

The choice between granting summary judgment based on a procedural default and ignoring a party's undue delay forces the court to an extreme result. A compromise is preferable. The approach described above is

commensurate with the harm caused by Plaintiffs' dilatory behavior. It penalizes Plaintiffs for failing to file a timely 3(g) statement without the harsh result of defeating their claim based on a procedural default. *See Citibank, N.A. v. Outdoor Resorts of America, Inc.,* 1992 WL 162926 1992 U.S.Dist. LEXIS 9624 (S.D.N.Y. Jun. 29, 1992) (even though non-moving party failed to submit Rule 3(g) statement, summary judgment on basis of procedural error was inappropriate when brief and two affidavits established non-moving party's grounds for opposing summary judgment).

## III. DISCUSSION

### A. Res Judicata

LDSC argues that the complaint is barred by the doctrine of res judicata. "A judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir.1985). "The parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *In re Teltronics Services,* 762 F.2d 185, 190 (2d Cir.1985) (quotations omitted). The proponent of res judicata must demonstrate that: (1) the court rendered a final judgment on the merits in the prior case; (2) the prior suit involved the same parties or their privies; and (3) the opponent bases the subsequent suit on the

---

2. On a motion for summary judgment, inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion. *See, e.g., United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). In providing that "all material facts set forth . . . by defendant will be deemed to be admitted unless controverted by the statement required to be served by the opposing party," Rule 3(g) cannot preclude consideration of all other submissions. Such a restrictive interpreta-

tion would be at odds with the goal of summary judgment. *See Brady v. Town of Colchester,* 863 F.2d 205, 210–11 (2d Cir.1988) ("if there is *any evidence in the record* from which a reasonable inference may be drawn in the non-movant's favor, summary judgment is inappropriate") (emphasis added).

A determination of summary judgment is made from the totality of statements proferred by the opposing party which demonstrate that there is a material factual issue to be tried. *See* Fed. R.Civ.P. 56(c). A strict interpretation of Rule 3(g) in this case would render Plaintiffs' timely submissions superfluous.

same causes of action. *See NLRB v. United Technologies Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983).

■ The doctrines of res judicata and collateral estoppel apply to an arbitral decision. *See James L. Saphier Agency, Inc. v. Green,* 190 F.Supp. 713, 719 (S.D.N.Y.), *aff'd,* 293 F.2d 769 (2d Cir.1961). Accordingly, a court will give an arbitration decision preclusive effect where the traditional prerequisites for preclusion are met. *See Mignocchi v. Merrill Lynch,* 707 F.Supp. 140, 143 (S.D.N.Y. 1989); *Norris v. Grosvenor Marketing Ltd.,* 632 F.Supp. 1193, 1195–96 (S.D.N.Y.), *aff'd in part,* 803 F.2d 1281 (2d Cir.1986).

Here, LDSC must demonstrate that there is an identity of parties between LDSC and Interdevco and an identity of claims between the fraud claims brought in this proceeding and the claims previously litigated in the London Arbitration. LDSC has failed to establish both of these propositions. As a matter of law, therefore, res judicata does not apply and summary judgment is denied.

### 1. *Identity of Parties*

■ LDSC argues that there is a sufficient "identity of parties" between LDSC and Interdevco to justify invoking res judicata. Privity between two parties fulfills the requirement of identity of parties; identity of parties encompasses all individuals whose interests were represented adequately in prior litigation by another with the authority of representation. *See Ellentuck v. Klein,* 570 F.2d 414, 426 (2d Cir.1978); *G & T Terminal Packaging Co. Inc. v. Consolidated Rail Corp.,* 719 F.Supp. 153, 158 (S.D.N.Y.1989) (citing *Expert Electric Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977)). Privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion. *Amalgamated*

*Sugar Co., LLC v. NL Industries, Inc.,* 825 F.2d 634, 640 (2d Cir.1987), *cert. denied,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1988).

■ LDSC contends that privity is established because: (1) LDSC and Interdevco are subsidiaries of the same foreign parent corporation; (2) representatives of LDSC and Interdevco were involved in negotiations with Plaintiffs which resulted in the contract between Plaintiffs and Interdevco; and (3) LDSC employees and representatives were witnesses for Interdevco in the London Arbitration. These arguments are insufficient to establish privity. *See National Fuel Gas Distribution Corp. v. TGX ¡Corp.,* 950 F.2d 829, 839 (2d Cir.1991) (determining privity requires a court to determine whether a party "controlled or substantially participated in the control of the presentation on behalf of a party" to the prior action); *see also Alpert's Newspaper Delivery v. New York Times Co.,* 876 F.2d 266, 270 (2d Cir.1989). Although LDSC and Interdevco are subsidiaries of the same foreign corporation, LDSC is an American corporation doing business in New York, while Interdevco is a British corporation doing business in England with its own officers and board of directors. Independent corporate affiliation, by itself, does not create a master/servant or principal/agent relationship. *See Murray v. Dominick Corporation of Canada, Ltd.,* 631 F.Supp. 534, 537 (S.D.N.Y.1986).

There is no privity between LDSC and Interdevco because LDSC was not a signatory to the arbitration agreement and could not be compelled to arbitrate. The goal of res judicata is to promote judicial economy by giving a plaintiff a strong incentive to join all potential defendants in the first action. *See Parklane Hosiery,* 439 U.S. at 326, 99 S.Ct. at 649, 58 L.Ed.2d 552 (1979). LDSC, however, was not a party to the arbitration agreement and could not be joined in the arbitration absent its consent.[3] Nor did LDSC appear voluntarily as a party to the

---

3. Arbitration proceedings acquire jurisdiction over the subject matter and the parties by bilateral consent of the parties. *See McAllister Bros. Inc. v. A & S Transp. Co.,* 621 F.2d 519, 522 (2d Cir.1980) (" 'arbitration is a matter of contract and a party cannot be required to submit to

arbitration any dispute which he has not so agreed to submit' ") (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

London Arbitration; it appeared only as a witness.

■ Moreover, the London Arbitration decision did not encompass the fraud claims against LDSC. The target of the arbitration was Interdevco and the dispute between Interdevco and Plaintiffs over sums owed to one another under the contracts. *See Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir.1995) (holding that parties' interests must be identical for a finding of privity); *Cf. United States v. International Bhd. of Teamsters,* 964 F.2d 180, 184 (2d Cir.1992) (concluding privity requires coinciding interests to third parties). Plaintiffs were unable to assert their fraud claims against LDSC at the arbitration. Further, Interdevco cannot be deemed to have represented LDSC's interests in the London Arbitration because Plaintiffs could not assert its fraud claims against Interdevco in place of LDSC. *See, e.g., Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982). There is therefore, as a matter of law, no identity of parties between LDSC and Interdevco.

### 2. *Identity of Claims* [4]

■ LDSC argues that the fraud claims in the instant action are a dressed up version of Plaintiffs' already adjudicated contract claim. *See Trusthouse Forte (Garden City) Management, Inc. v. Garden City Hotel, Inc.,* 106 A.D.2d 271, 272, 483 N.Y.S.2d 216 (1st Dep't 1984) (barring fraud claim because allegation of fraud was merely an attempt to relitigate contract claim). To preclude the fraud claims, LDSC must demonstrate that Plaintiffs base their suit on the same cause of action asserted in the prior arbitration. *See Parklane,* 439 U.S. at 326, 99 S.Ct. at 649. The actions need not be identical; they need only be integrally related. *G & T Terminal Packaging,* 719 F.Supp. at 158. Although no one factor is dispositive, a court considers: (1) whether the same transaction is at issue; (2) whether the same evidence is needed to support both claims; and (3) whether the facts essential to

the second action were present in the first. *NLRB,* 706 F.2d at 1260.

Although LDSC alleges that the fraud claim is a dressed up relitigation of the earlier contract claim, this Court has already found that Plaintiffs have pleaded sufficient allegations of fraud to withstand a motion to dismiss. *Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Company, Inc.,* No. 93–2302 (S.D.N.Y. Apr. 8, 1993). Although there is some factual overlap, the two actions appear to be separate. The London Arbitration encompassed a contract dispute between Interdevco and Plaintiffs regarding the sums due under the various agreements. Plaintiffs "bait and switch" allegation was not raised or examined at that time. Further, the purpose of the London Arbitration was to untangle and settle the amounts Interdevco and Plaintiffs owed one another. A claim of fraudulent inducement against LDSC raises issues well beyond the scope of that litigation. As such, the fraud action is different from the breach of contract claim and, as a matter of law, there is no identity of claims.

### B. *Collateral Estoppel*

LDSC argues that Plaintiffs have already fully and fairly litigated the issue of the Joint Agreement in the London Arbitration. LDSC further argues that the doctrine of collateral estoppel bars Plaintiffs from relitigating the fraud issues arising from that account.

■ Collateral estoppel prevents the relitigation of an issue that was raised, litigated, and decided in a prior proceeding. *See Beck v. Levering,* 947 F.2d 639, 642 (2d Cir. 1991); *Balderman v. United States Veterans Administration,* 870 F.2d 57, 62 (2d Cir. 1989). Unlike res judicata, however, collateral estoppel precludes the relitigation of conclusively determined issues even if the plaintiff bases the subsequent suit on a different cause of action. *G & T Terminal Packaging,* 719 F.Supp. at 159. Additionally, non-parties to the prior action may invoke the doctrine. *See Fairchild, Arabatzis &*

---

**4.** The failure to establish either the identity of the parties *or* claims is sufficient. I will nonetheless address this issue to provide an alternative ground for the holding.

*Smith, Inc. v. Prometco (Produce & Metals) Co., Ltd.*, 470 F.Supp. 610, 617 (S.D.N.Y. 1979).

■■■ For collateral estoppel to apply, a party must show (1) that the issue was not only litigated but also was necessary to the outcome of the prior action; and (2) that the litigant had a full and fair opportunity to litigate its case. *Jim Beam Brands Co. v. Beamish & Crawford, Ltd.*, 937 F.2d 729, 734 (2d Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992); *Owens v. Treder*, 873 F.2d 604 (2d Cir.1989).

■■■ In *Murray*, 631 F.Supp. at 537, this Court held that an investor's securities fraud action against a brokerage firm and its president was not barred by collateral estoppel despite a prior arbitration in favor of the investor against an affiliate of the brokerage firm. The Court concluded that the arbitration award did not necessarily encompass all issues which could be raised against the brokerage firm and its president, finding that "it is not possible to conclude that the entire conduct of [the brokerage firm and its president] were considered in the arbitrators' decision and award." *Id.* The same is true in the instant action. The contract issues asserted against Interdevco did not necessarily encompass the fraud issues now raised against LDSC. The record does not demonstrate that the arbitrators' decision considered the entire conduct of LDSC in connection with the Joint Account. Facts and evidence essential to showing that LDSC acted fraudulently were not present or required to support Plaintiffs' prior contract claims. As such, Plaintiffs have not had a full and fair opportunity to litigate the fraud issues concerning LDSC.

LDSC is not entitled to summary judgment on its collateral estoppel defense as the undisputed facts do not warrant a finding of collateral estoppel.

C. *Order Compelling Arbitration And/Or Order Staying Action Pending Arbitration*

1. *Order Compelling Arbitration*

Alternatively, LDSC argues that it is entitled to an order compelling Plaintiffs to arbitrate the issues raised in the complaint pursuant to the Federal Arbitration Act ("FAA"). The FAA provides, in part:

> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement may petition any United States District Court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Although not a formal party to the arbitration agreement, LDSC contends that it still may invoke the arbitration clause. In support of its argument, LDSC cites cases recognizing that an arbitration clause may, in some instances, apply to a nonsignatory. *See Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir.1993), *cert. denied*, 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993); *Matter of Keystone Shipping Co. and Texport Oil Co.*, 782 F.Supp. 28 (S.D.N.Y.1992).

■■■ The Second Circuit has recognized five theories under which a court may apply an arbitration clause to a non-signatory: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel. *Thomson–CSF, S.A. v. American Arbitration Association*, 64 F.3d 773, 776 (2d Cir.1995) (providing thorough analysis of these theories). The case presented here implicates the agency and alter-ego theories.

■■■ Under an agency theory, a non-signatory may enforce an arbitration agreement contained in a contract that it signed on behalf of its principal. *See Fisser v. International Bank*, 282 F.2d 231, 234–35 (2d Cir. 1960); *Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*, 658 F.Supp. 809, 813 (S.D.N.Y.1987). However, signing an arbitration agreement as an agent for a disclosed principal is not sufficient to render the agent a party to the arbitration clause. *See Keystone Shipping Co.*, 782 F.Supp. at 30. The fact that an LDSC employee signed the contracts on behalf of its disclosed principal, Interdevco, therefore does not give LDSC authority to enforce the arbitration clause.

Under an alter-ego theory, "the corporate veil may be pierced and a party may be held bound to arbitrate as the signatory's alter-ego." *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 523 F.2d 527, 537 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). Nevertheless, the corporate affiliation alone does not provide a basis for allowing a non-signatory to enforce the arbitration clause. *See Fried, Krupp, GmbH v. Solidarity Carriers, Inc.*, 674 F.Supp. 1022, 1027 (S.D.N.Y.), *aff'd*, 838 F.2d 1202 (2d Cir.1987). A relationship that will permit a non-signatory to act as an alter-ego (and thereby compel arbitration) exists where "the parent corporation so dominates and controls the affairs of its subsidiary that the subsidiary cannot be said to have any independent existence of its own." *Coastal States Trading, Inc. v. Zenith Navigation, S.A.*, 446 F.Supp. 330, 336–37 (S.D.N.Y.1977). LDSC has not demonstrated that such a relation between LDSC and Interdevco exists. Therefore, this Court cannot pierce the corporate veil and permit LDSC, a non-signatory, to enforce the arbitration agreement between Interdevco and Plaintiffs under an alter-ego theory.

Other circuits have recognized an alternative estoppel theory which allows a non-signatory to enforce an arbitration clause against a signatory. *See generally Thomson–CSF, S.A.*, 64 F.3d at 778 (noting, although not expressly adopting, alternative estoppel theory); *Sunkist Soft Drinks, Inc. v. Sunkist Growers Inc.*, 10 F.3d 753, 757–58 (11th Cir.1993), *cert. denied*, — U.S. —, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile,. S.A.*, 863 F.2d 315, 320–21 (4th Cir.1988); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir.1984). In these cases, signatories were required to arbitrate with non-signatories because of "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were intimately. founded in and intertwined with the underlying contract obligations." *Sunkist*, 10 F.3d at 757 (quotation omitted).

This case is similar to those addressed by the courts that permitted a non-signatory to compel arbitration pursuant to the alternative estoppel theory. LDSC's relationship and obligations regarding the Joint Account go to the heart of the fraud claim. LDSC played a pivotal role in the formation and execution of the Joint Account. It negotiated with Plaintiffs before being replaced at the last minute by Interdevco. It is now accused of using the Joint Account to effect a fraud against Plaintiffs. LDSC's nexus to the underlying contract is a predicate to determining whether it fraudulently managed the Joint Account. Accordingly, because of the close relationship between LDSC and Plaintiffs and the integral link between the fraud claim and the underlying contractual obligations, LDSC, as a non-signatory, may invoke the arbitration clause.

Moreover, facts which led to Plaintiffs' discovery of the alleged fraud were uncovered in the arbitration proceeding. It is logical that this matter be sent back to arbitration to further explore those issues touched upon, but not fully deliberated or settled, in that proceeding. As such, LDSC may compel Plaintiffs to arbitrate in accordance with the arbitration clause.

### 2. *Order Staying Motion Pending Arbitration*

Because this Court finds that Plaintiffs' claim should be submitted to arbitration, LDSC's request to stay the action pending arbitration is granted. The action is hereby placed on the suspense docket.

### IV. *Conclusion*

For the foregoing reasons, Defendant's motion for summary judgment is denied, and its motion for an order compelling arbitration is granted.

SO ORDERED.