**MASON TENDERS et al., Plaintiffs,**

**v.**

**ABATEMENT INTERNATIONAL/ADVATEX ASSOCIATES, INC., Defendant.**

**No. 98 Civ. 6286(SHS).**

United States District Court, S.D. New York.

Jan. 25, 2000.

Lawrence A. Kravitz, Gorlick, Kravitz & Listhaus, P.C., New York City, for Plaintiffs.

Michael F. Fitzgerald, New York City, for Defendant.

## OPINION

STEIN, District Judge.

The issue for determination is whether a general contractor can be held liable to a union and its multiemployer pension and welfare funds for payments due from a subcontractor. For the reasons set forth below, the answer in the context of the facts here is affirmative. Plaintiffs—several pension and welfare funds of the Mason Tenders Union—claim that the defendant general contractor is liable for these delinquent payments pursuant to an industry wide collective bargaining agreement with the union. All parties have cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, the general contractor's motion for summary judgment is denied and plaintiffs' motion for summary judgment is granted as to liability but denied as to damages.

## I. Background.

Defendant Abatement International/Advatex Associates, Inc. ("Abatement") is a general contractor which, through its industry wide representative, Environmental Contractors Association, Inc., entered into a collective bargaining agreement ("Abatement CBA") with the relevant union, Mason Tenders District Council of Greater New York ("Mason Tenders" or the "Union"). Pursuant to Article II § 2 of the Abatement CBA, Abatement agreed not to utilize a subcontractor unless the subcontractor "agrees to be bound by the terms of this agreement and/or has an Agreement with the Union having jurisdiction over such work...." Abatement further specifically agreed that it would "be responsible for the payment of wages, fringe benefits fund contributions, and working dues check-offs by such subcontractor."

During the period of the Abatement CBA, Abatement entered into subcontracting agreements with nonparty Diamond Construction & Maintenance, Inc. Diamond was a signatory to a separate collective bargaining agreement ("Diamond CBA") with the Union. The Diamond CBA obligated Diamond to make contributions to plaintiffs Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, and Asbestos Training Program Fund (collectively "the Funds") and to contribute dues check-offs to the Union. The Funds are all multiemployer, labor-management trust funds established and maintained pursuant to collectively bar-

gained agreements and thus qualify as "multi-employer plans" as defined by ERISA, 29 U.S.C. § 1002(37). Despite its contractual obligations, Diamond failed to make the full contributions to the employee pension fund, pay union dues check-offs or maintain documents recording the work performed by members of the Union.

On April 7, 1997, various parties—including several of the same parties to this action—sued Diamond and its affiliates. A judgment on consent was subsequently entered against the defendants to that litigation ordering delinquent payments and interest in the amount of $812,598.51 to the various funds bringing suit and $56,906.35 to the Union for dues check-offs.

Diamond's obligations remain unpaid and plaintiffs have brought this action to collect from Abatement the outstanding amounts, plus interest and fees.

## II.   Discussion.

### A.   Summary Judgment Standard

A court may grant summary judgment "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)). The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen*, 64 F.3d at 79 (quoting *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir.1989)) (citations omitted).

### B.   Liability

■  Plaintiffs claim that Abatement owes them the unpaid benefit contributions and unpaid dues checkoffs pursuant to both ERISA and the contract entered into by Abatement.

#### 1.   Benefit Contributions.

ERISA § 503(f), 29 U.S.C. § 1132(f), grants this Court jurisdiction over any action by a plan's fiduciaries to enforce ERISA obligations, including the obligation established by ERISA § 515, which provides that:

"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

ERISA § 515, 29 U.S.C. § 1145.

ERISA defines an employer as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. ·§ 1002(5). This action arises from the collectively bargained agreement signed between Abatement's representative and the Mason Tenders Union. In other words, Abatement is being sued as an employer signatory to a collective bargaining agreement which allegedly obligates it to contribute to various employee benefit plans.

Despite this clear statutory language, Abatement contends that it does not qualify as an "employer" for the purpose of these payments because, as general contractor, Abatement was not the employer of the subcontractor's employees. Abatement points to several cases to support its position. In none of those cases, however, had the general contractor agreed in a collective bargaining agreement—as Abatement has here—to "be responsible for the payment of wages, fringe benefits fund contributions, and working dues check-offs by [its] subcontractor[s]." For example, in *Carpenters Health & Welfare Trust Fund v. Tri Capital Corp.*, 25 F.3d 849 (9th Cir.1994), on which Abatement relies, the general contractor was not sued

as a signatory to a collective bargaining agreement; it was obligated to make payments based solely upon its contract with the subcontractor, not upon a collective bargaining agreement with the union. *See id.* at 856. The court concluded that such a claim was an action based upon state third-party beneficiary law and not ERISA.

This Circuit has similarly found that a third party surety is not an ERISA employer where it has not signed a collective bargaining agreement. In *Greenblatt v. Delta Plumbing & Heating Corp.,* guardians of employee benefit funds sought payment from an employer's surety. 68 F.3d 561 (2d Cir.1995). Holding that the surety was not an ERISA employer, the court explained "[w]e are confronted only with a contractual relationship separate from the collective bargaining agreement by which the surety guaranteed payment of a certain sum if the contractor defaulted on its obligations." *Id.* at 575–76.

This Circuit applies this analysis to nonsignatory general contractors as well. In *Bleiler v. Cristwood Constr., Inc.,* 72 F.3d 13 (2d Cir.1995), a union trustee sought to collect unpaid fund contributions incurred by a subcontractor from a general contractor and a surety. The general contractor's obligation was based upon a contract with the subcontractor. *See id.* at 15. The court concluded that "contractors who are not signatories to collective agreements, but who assume financial guarantees of contribution payments, do not qualify as ERISA employers." *Id.*

Unlike those cases, this action does not involve an attempt to impute liability to a nonsignatory contractor. Abatement's obligation to contribute to the benefit funds is established pursuant to the collectively bargained agreement with Mason Tenders. At least one circuit has found ERISA § 515 liability where a contractor agreed to assume a subcontractor's obligations in its collective bargaining agreement. *See Laborers' Pension Fund v. Concrete Structures of the Midwest, Inc.,* 999 F.2d 1209, 1211 (7th Cir.1993).

The Court must now turn to the question of whether the Abatement CBA obligates Abatement to pay the fund contributions. On this point, the agreement is clear: "Any Employer who subcontracts any such work shall be responsible for the payment of wages, fringe benefits fund contributions, and working dues check-offs by such subcontractor."[1] Abatement is liable to Mason Tenders for the delinquent payments.

### 2. Dues Check-offs

As a matter of contract law, Abatement is liable for the payment of dues check-offs as well. As noted above, the CBA obligates Abatement to pay the union dues check-offs owed by its subcontractor. As already noted, Article II Section 2 of the Abatement CBA provides that "[a]ny employer who subcontracts any such work shall be responsible for the payment of wages, fringe benefits fund contributions, and working dues check-offs by such subcontractor."

### C. Defenses

Abatement offers two defenses to its liability under the CBA it signed. First, it contends that plaintiffs' earlier suit against Diamond for the delinquent payments and the dues check-offs precludes this action. Second, it argues that the doctrine of equitable estoppel bars this action on the theory that plaintiffs' failure to include Abatement in the earlier suit unfairly prejudiced its interests.

Neither of these defenses has merit.

---

1. Even if this Court were to find that Abatement were not an ERISA employer, this provision of the Abatement CBA would require payment as a matter of contract law. Section 301 of the LMRA, 29 U.S.C. § 185(a), provides subject matter jurisdiction to federal courts for suits for violation of contracts between an employer and a labor organization.

### 1. Res Judicata

The party that asserts res judicata preclusion bears the burden of proving its claim. *See Computer Associates Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997), *cert. denied*, 523 U.S. 1106, 118 S.Ct. 1676, 140 L.Ed.2d 814 (1998). Specifically, it must prove that four conditions are met in order to bar a later action: 1) the earlier action terminated with a final decision on the merits; 2) the parties are identical; 3) the prior court was competent; and 4) the two causes of action are the same. *See Corbett v. MacDonald Moving Services, Inc.*, 124 F.3d 82, 87–88 (2d Cir.1997).

Res judicata does not preclude this suit if the prior action did not concern the same cause of action. Identity of the cause of action is not subject to any automatic test. Instead, the district court must examine whether "the same transaction, evidence, and factual issues" are at stake in the current action as in the prior one. *Corbett*, 124 F.3d at 89. The Second Circuit has adopted a standard in which "the fact that both suits involved essentially the same course of wrongful conduct is not decisive; nor is it dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues." *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (internal citations and quotation marks omitted). Instead, the two claims must typically involve such similar transactions that "the same evidence is needed to support both claims, and ... the facts essential to the second were present in the first." *Id.* at 1464 (internal citations and quotation marks omitted); *see also Computer Associates Int'l, Inc.*, 126 F.3d at 369; *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997).

Plaintiffs' alleged injury in this action is breach of the Abatement CBA, while the earlier injury involved a breach of a wholly separate contract, namely the separate CBA that Diamond entered into.

Accordingly, the present suit concerns whether Abatement contracted to be financially responsible for dues check-offs and fund payments for subcontractor employees. That obligation is independent of Diamond's obligation and would stand even if Diamond had never signed a collective bargaining agreement with the Union. Although the two suits involve similar and overlapping facts, they assert separate causes of action. *See, e.g., Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co., Inc.*, 933 F.Supp. 1170, 1177 (S.D.N.Y.1996) (allowing a fraud claim which arose from dealings between sugar distributers after those parties had arbitrated their contract claims regarding the same dealings). Res judicata therefore does not bar this claim.

### 2. Equitable Estoppel

The doctrine of equitable estoppel permits a court to estop a party from enforcing its rights against another where enforcement would result in fraud or injustice. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir.1996). It is imposed where "the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir.1996).

Abatement contends that plaintiffs' failure to include it as a party in the earlier action against Diamond has prejudiced its interests and that plaintiffs should be estopped from asserting a claim in this case. Its claims of prejudice, however, do not bear scrutiny. To the extent that Abatement believes it is precluded from rebutting any evidence of damages asserted by plaintiffs, it is wrong. The prior action against Diamond does not inhibit Abatement from challenging any evidence presented at the damages inquest ordered by this Court.

Abatement also claims it is prejudiced because it lost the opportunity to assert

any counter or cross claims in the prior action. Defendant never explains, however, why it would be unable to assert such claims in the present action or in a separate action against Diamond altogether.

Finally, defendant claims that there are benefits to defending the action on the merits in a single unitary suit, including the opportunity to secure the production of documents and testimony in support of its position from non-party Diamond. The Federal Rules of Civil Procedure, however, authorize discovery from non-parties as well as parties.

In sum, Abatement has not established how its failure to be named as a party in the prior action against Diamond has prejudiced it, and its claim that plaintiffs should be equitably estopped from pursuing this action is not meritorious.

### D. Damages

As noted above, plaintiffs seek summary judgment on the issue of damages as well as on liability; Abatement claims that, at a minimum, a hearing is necessary to establish the amount of damages. In light of issues of fact raised in the supporting affidavits concerning the reliability of the underlying project log books, remittance reports and shop steward reports, an inquest shall take place to determine the proper amount of damages.

### III. Conclusion.

For the foregoing reasons, defendant's motion for summary judgment is denied and plaintiffs' motion for summary judgment is granted as to liability and denied as to damages. An inquest shall take place to determine the proper amount of damages.